# United States Court of Appeals for the Federal Circuit

05-7155

JAMES L. DESHOTEL,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Francis M. Jackson, Jackson & MacNichol, of Portland, Maine, argued for claimant-appellant.

John S. Groat, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Michael J. Timinski and Amanda R. Blackmon, Attorneys, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Lawrence B. Hagel

# United States Court of Appeals for the Federal Circuit

05-7155

JAMES L. DESHOTEL,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  July 27, 2006

_____

Before, GAJARSA, DYK, and PROST, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

James L. Deshotel seeks review of the decision of the United States Court of Appeals for Veterans Claims ("Veteran's Court") dismissing his appeal for lack of jurisdiction.  We affirm.

## BACKGROUND

Deshotel served on active duty in the United States Army from October 1965 to May 1969.  During his service, he was involved in a car accident resulting in a cerebral concussion and a dislocated shoulder and fractured clavicle.  In May 1969, Deshotel filed a claim for disability compensation benefits for his injuries.  The Department of Veterans Affairs ("VA") regional office ("RO") granted service connection for Deshotel's shoulder injury, finding the injury to be 20% disabling but did not grant service

connection for his residual head injury claims. There is no contention here that this May 1969 claim included a claim for psychiatric disability.

In July 1984, Deshotel filed an application to reopen his denied claim for service connection for residuals of his head injury and, it appears, for an increased disability rating for his back and shoulder injuries. Deshotel contends that under our decisions in Moody v. Principi, 360 F.3d 1306 (Fed. Cir. 2004), Szemraj v. Principi, 357 F.3d 1370 (Fed. Cir. 2004), and Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001), the VA was required to construe this pro se claim sympathetically to include a claim for psychiatric disability as well as a claim for physical disability resulting from the head injury. In January 1985, after conducting a medical examination (including a psychiatric examination), the RO granted service connection for "status post head trauma with post traumatic headaches," finding the injury to be 10% disabling. The RO's decision did not specifically address any secondary claim for psychiatric disability, although it did note in its narrative that the "VA exam shows no psychiatric symptomatology noted at present time." Deshotel did not appeal from this rating determination.

In August 1999, Deshotel again sought to reopen his compensation claim, this time to include claims for "memory loss and depression due to head/brain disease." In addressing this claim in September 1999, the RO explicitly treated Deshotel's claim as including a psychiatric claim based on new and material evidence. The RO increased Deshotel's disability from 10% to 30% for the head trauma and headaches, but deferred a rating as to memory loss and depression (the "psychiatric" disability claims) secondary to the service-connected head injuries until further medical records were available. In March 2000, the RO denied service connection for Deshotel's psychiatric disability

claims. Deshotel then began the appeal process by filing a notice of disagreement ("NOD"). In response, on October 20, 2000, the RO issued a new decision in which it found a 70% service-connected psychiatric disability for "mood disorder, personality change and cognitive disorder secondary to traumatic brain injury with post-traumatic headaches," effective from August 4, 1999, the date on which Deshotel sought to reopen his claim. J.A. at 5.

Deshotel then filed a second NOD, arguing that the effective date of the 70% psychiatric disability determination should have been July 20, 1984—the date that Deshotel requested that his claim be reopened. The RO notified Deshotel that it construed his second NOD as raising an allegation of clear and unmistakable error ("CUE") in the RO's January 1985 decision—specifically, an allegation that the 1985 decision was erroneous because the psychiatric examination "failed to identify any psychiatric disability" even though the evidence indicated that Deshotel in fact had a psychiatric disability at the time. J.A. at 248. The RO found no CUE in the January 1985 decision.

Deshotel appealed to the Board of Veterans' Appeals ("Board"). The Board concluded that the RO's January 1985 decision had "implicitly" denied any claim for service connection based on psychiatric disability and that there was no CUE in that decision. Deshotel then appealed to the Veteran's Court. Deshotel made two arguments to the Veteran's Court. First, Deshotel directly challenged the October 2000 decision, arguing that the RO "erred by selecting an effective date in 1999 and not in 1984 . . . and that [Deshotel's] 1984 claim and the [1985 RO] decision '[gave] rise to an informal claim of psychiatric disability' that was not adjudicated until October 2000 . . . ."

Deshotel v. Nicholson, No. 03-517, 2005 WL 496685, 19 Vet. App. 465, at *3 (Feb. 3, 2005). Second, Deshotel argued CUE in the 1985 decision because the RO "overlook[ed] the significant findings of the psychiatric report . . . ." Id. The Veteran's Court determined that it lacked jurisdiction over both of these arguments. With respect to Deshotel's first argument, the Veteran's Court decision is less than clear, curiously and incorrectly stating that "there has been no Board decision on the issue of entitlement to an effective date prior to August 4, 1999 . . . ." Id. at *5. Nonetheless, we understand the Veteran's Court to have held that it lacked jurisdiction to consider an appeal from the RO's 1985 decision because that decision had become final and "only a claim of [CUE] could have resulted in an effective date prior to the January 1985 regional office decision for the October 2000 award . . . ." Id. at *4. With respect to Deshotel's second argument regarding CUE in the 1985 decision, the Veteran's Court held that this specific CUE argument (that the RO overlooked findings that had been made in the psychiatric report) had not been raised to the Board and that Deshotel had instead argued a different CUE to the Board (that the VA medical examiner erred by failing to diagnose or making a finding of psychiatric disability despite the alleged evidence of the disability). Thus, the Veteran's Court dismissed Deshotel's appeal for lack of jurisdiction. Deshotel timely appealed to this court, reasoning under the first argument. We have jurisdiction under 38 U.S.C. § 7292 because Deshotel alleges legal error in the Veteran's Court decision. Szemraj, 357 F.3d at 1374-75.

DISCUSSION

The effective date of an award based on a veteran's request to reopen a final decision on the basis of new and material evidence is generally the date that the

application to reopen was filed. 38 U.S.C. § 5110(a) (2000); Sears v. Principi, 349 F.3d 1326, 1330-31 (Fed. Cir. 2003). In contrast, the reopening of a final decision based on CUE "has the same effect as if the [reopening] decision had been made on the date of the prior decision." 38 U.S.C. §§ 5109A(b), 7111(b) (2000). Generally, an RO's initial determination will become final unless the veteran appeals that determination to the Board. Cook v. Principi, 318 F.3d 1334, 1340 (Fed. Cir. 2002) (en banc).

In this case, if the RO's 1985 decision was a final decision, then Deshotel could not claim 1984 as the effective date for his psychiatric disability unless he could establish CUE in the 1985 decision. However, on appeal to this court, Deshotel has elected not to pursue a CUE claim. Instead, Deshotel contends that the 1985 decision was not final as to his psychiatric claim because that claim was never explicitly addressed in the 1985 RO decision. Therefore, he argues, the 1985 psychiatric claim remained pending and unadjudicated until the RO's October 2000 decision, which granted the psychiatric claim but rejected the 1984 effective date.[1] Appellant's Br. at 8-9. We conclude that the 1985 decision constituted a final decision on the psychiatric claim.

Where the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal

---

[1] None of the cases relied upon by Deshotel, i.e., Moody, Szemraj, or Roberson, involved an allegation that an implied claim remained pending before the VA as a result of the RO's failure to read a claim sympathetically.

period begins to run.[2]  We considered this exact issue in <u>Andrews v. Nicholson</u>, 421 F.3d 1278 (Fed. Cir. 2005), although the argument regarding a pending unadjudicated claim was made there by the government rather than the veteran.

In <u>Andrews</u>, the veteran, proceeding pro se, filed an application for disability benefits and, in 1985, was awarded a partial disability rating of 30% for post-traumatic stress syndrome by the RO.  <u>Id.</u> at 1279.  Later, the veteran obtained counsel and challenged the RO's rating determination on CUE grounds, contending that he should have been awarded a higher rating.  <u>Id.</u>  The veteran's CUE claim was denied by the Board.  <u>Id.</u>  The Veteran's Court found no CUE in the RO's rating determination.  <u>Id.</u> at 1280.  The Veteran's Court also held that the veteran had waived any argument that the RO committed CUE because the RO did not construe the veteran's previous pro se application as including an implied claim for total disability based on individual unemployability ("TDIU") under <u>Roberson</u>.  <u>Id.</u> at 1280-81.

The veteran asserted that the Veteran's Court had erred in finding that the CUE claim concerning TDIU had been waived.  In response, the government contended that even if the claim had been preserved and if the RO had erred in failing to read the veteran's disability claim sympathetically to include a TDIU claim, a CUE claim would not be the proper path for correcting that error because the RO had not specifically addressed the TDIU claim and it was still pending before the RO awaiting adjudication.  <u>Id.</u> at 1281.  We explicitly rejected the government's contention that the implied TDIU

---

[2] In order to appeal, the veteran must file a NOD within one year from the date of the RO's initial determination.  38 U.S.C. § 7105(b)(1).  Here no NOD was filed with respect to the 1985 decision.

claim was pending and unadjudicated. Id. Relying on Roberson, 251 F.3d at 1383-84, we held that where an RO renders a decision on a veteran's claim for benefits but fails to address one of the claims, that decision is final as to all claims; the RO's failure to address the implied claim "is properly challenged through a CUE motion," not a direct appeal.[3] Andrews, 421 F.3d at 1281; see also Cook, 318 F.3d at 1339 (holding that "[t]he statutory scheme provides only two exceptions to the rule of finality" of VA decisions, a CUE claim and a claim to reopen based on new and material evidence).

Thus under the rule articulated in Andrews, if Deshotel believed that the RO improperly failed to address his claim for psychiatric disability benefits when it granted service connection for his head injuries in 1985, his remedy was either to file a timely direct appeal or to file a CUE claim seeking to reopen the 1985 RO decision. Here, no direct appeal was filed, and a CUE claim was abandoned. The Veteran's Court therefore properly dismissed Deshotel's appeal for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed.

## AFFIRMED

## COSTS

No costs.

---

[3] In Andrews, after treating the 1985 decision as final, we went on to hold that although the VA was required to construe all of the pro se veteran's pleadings (including CUE claims) sympathetically under Roberson, that requirement did not apply to pleadings filed by counsel. Andrews, 421 F.3d at 1283. Thus even if the RO in 1985 had failed to sympathetically construe the veteran's pro se application, counsel's failure to raise this error in the subsequent CUE motion was fatal. Id.

05-7155                                          7